# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MARY DOMINGUE** | : | **DOCKET NO. 08-CV-1117** |
| **VS.** | : | **JUDGE MINALDI** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## BACKGROUND

Plaintiff to this action, Mary Domingue, initially filed an application for disability insurance benefits and supplemental security income on May 24, 2005, claiming disability due to diabetes, heart problems, bleeding ulcers, glaucoma, colon problems, and high blood pressure beginning February 24, 2005. Transcript at 13, 56. Plaintiff's application for benefits was denied, and plaintiff requested a hearing before an administrative law judge (ALJ). *Id.* at 13. On April 20, 2007, a hearing was held. *Id*. At the hearing, plaintiff, represented by counsel, testified, along with a medical expert and a vocational expert (VE). *Id.* The ALJ issued a written decision on April 7, 2008, finding plaintiff not disabled within the meaning of the Social Security Act. *Id.* at 21.

On May 23, 2008, plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 9.  The Appeals Council, under authority of the defendant, the Commissioner of the Social Security Administration, denied plaintiff's request for review.  *Id.* at 6.

Pursuant to 42 U.S.C. § 405(g), plaintiff requested that this court review the decision of the Commissioner to determine if it complies with applicable law and is supported by substantial evidence.  This court finds that it is.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)).  The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236).  "It is 'more than a mere scintilla and less than a preponderance.'"  *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is

present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1421, 28 L. Ed. 2d 842 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## DISCUSSION

The burden of proving that he or she suffers from a disability[1] rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (2000)).

---

[1] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work (PRW), and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Id.* at 462 (citing 20 C.F.R. § 404.1520(e)).

Once the claimant has made an appeal, the Appeals Council may decide to grant review, deny review, or dismiss the appeal. "[W]hen the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision." *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

Here, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act from February 24, 2005, through the date of the decision, April 7, 2008. Transcript at 13. Specifically, the ALJ found that, (1) plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; (2) plaintiff's severe impairments included coronary artery disease and diabetes; and, (3) plaintiff's impairments do not meet or exceed any listed impairment. *Id*. at 15. The ALJ concluded that plaintiff's RFC allows her

> to perform sedentary work with a sit/stand option; occasional stooping, twisting, crouching, kneeling, climbing of stairs or ramps, crawling, and balancing; no climbing of ladders or

>   scaffolds; and an environment free from poor ventilation, dust, fumes, gases, odors, humidity, wetness, and temperature extremes.

*Id.* at 16.

Based on the assigned RFC, the ALJ determined, with the aid of a VE, that plaintiff could not perform her PRW, and so went on to step five of the determination. *Id.* at 19. Again enlisting the aid of the VE, the ALJ found that plaintiff could perform the requirements of representative semi-skilled occupations such as receptionist/information clerk, order clerk, and inventory clerk for which a significant number of jobs exist in the region and throughout the U.S. *Id.* at 20.

Before this court, plaintiff challenges the ALJ's findings on the fifth step. Plaintiff argues that: (1) "the ALJ's decision was not supported by substantial evidence because . . . [t]he ALJ erroneously relied on non-existent VE testimony;" and, (2) the Commissioner "failed to apply proper principles of law because . . . [t]he ALJ failed to properly apply § 201.00(f) [of the Medical-Vocational Guidelines]." Doc. 20, at 5.

Where, as here, an individual is of advanced aged (55 or older), limited to sedentary work, has a high school education, but does not have education providing for direct entry into skilled work, the individual is disabled unless she possesses skills from her PRW that are readily transferable to other sedentary jobs. *See* 20 C.F.R. § 404, Subpart P, Appendix 2, Table 1 (Medical-Vocational Guideline § 201.06.). To find that an individual's skills from her PRW are transferable to other jobs, "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry." Social Security Ruling 82-41(4)(c); *See also,* 20 C.F.R. § 404.1568(d)(4); *See also,* 20 C.F.R. § 404, Subpart P, Appendix 2, § 201.00(f) (Medical-Vocational Guidelines § 201.00(f)). "In order to establish transferability

of skills for such individuals, [the duties] of their past work must be so closely related to other jobs . . . that they could be expected to perform [these other jobs] at a high degree of efficiency with a minimal amount of job orientation." Social Security Ruling 82-41(4)(c).

Here, the court must affirm the Commissioner's decision if substantial evidence shows that, without more than very little vocational adjustment, plaintiff could perform the jobs identified by the VE. Plaintiff argues that the evidence demonstrated that she could not perform any of the jobs listed by the VE without more than very little vocational adjustment. Doc. 20, at 5.

Plaintiff claims that the VE did not testify that plaintiff could perform the jobs without very little vocational adjustment. "The ALJ erroneously relied on non-existent VE testimony." *Id*. Since there was not VE testimony on which to base his decision, plaintiff says that the ALJ failed to properly apply principles of law. *Id.* at 9. "Had the ALJ done so, the ALJ likely would not have found the skills to be transferable pursuant to Medical-Vocational Guidelines, §201.00(f)." *Id*. In response, the defendant argues that "the ALJ properly found . . . that Plaintiff was not disabled because she retained the ability to make a successful vocational adjustment . . . ." Doc. 22, at 2.

To determine whether substantial evidence exists to support the Commissioner's decision, the court will examine: (1) the skills the VE identified that plaintiff gained in her PRW; (2) the jobs that the VE identified that plaintiff can perform using those skills; and, (3) any other relevant evidence as well as the arguments presented by the parties.

The VE identified the following skills that plaintiff acquired from her PRW as an assistant manager at Bill's Dollar Store: opening and closing the store, supervising other

employees, communicating information to other people, ordering store goods, completing night deposits, closing out registers, sales duties, inventorying of goods, and administrative duties. *See* Transcript at 621.

The VE indentified the following jobs that the plaintiff could perform based on her acquired skills from her PRW:  receptionist/information clerk, order clerk, and interviewing clerk. *Id*. at 622-25. These jobs are defined in the Dictionary of Occupational Titles (D.O.T.). *See, e.g.,* Dictionary of Occupational Titles §§ 237.367-038, 237.367-022, 249.362-026 (4th Ed. 1991). The VE specifically testified that there were "[n]o conflicts" between his testimony and the D.O.T. descriptions of these jobs. *Id.* at 20, 625. Based on the VEs testimony, the ALJ concluded that:

> The claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. The vocational expert testified the claimant's previous work is so similar to the jobs recited above that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

*Id.* at 20.

Plaintiff disagrees with the ALJ and argues that the VE actually testified that the jobs identified would require more than very little vocational adjustment. Doc. 20, at 9. Specifically, plaintiff says that the VE stated that the proposed jobs had different work settings than plaintiff's PRW. *Id*. For example, plaintiff lists malls, warehouses, distribution centers, restaurants, hospitals, convenience stores, and government agencies as possible work settings that the VE testified to for an order clerk. *Id*. Plaintiff concludes that "[n]one of these settings included a work setting that was similar to that of a dollar store." *Id*.

Plaintiff fails to mention that the VE also mentioned that order clerks can work in the retail setting, which is the same work setting as plaintiff's PRW at Bill's Dollar Store. Transcript at 627-29. Defendant on the other hand, says that the VE testified that the jobs or receptionist/information clerk, order clerk, and interviewing clerk can all be performed in the retail setting. Doc. 22, at 4. *See also,* Transcript 627-29.

Plaintiff says that the VE said that "there would be" differences in the work settings of the receptionist/information clerk job and plaintiff's PRW. *Id.* at 8. Plaintiff's statement is misleading. The VE's tesimony, read in the context of plaintiff counsel's questioning, is hardly definitive.

> Q      Okay. Now if we could go to the sedentary ones, the interviewing clerk, the order clerk, or the receptionist/info clerk. What kind of industry are those in?
>
> A      You're going to have a variety of industries ranging from stores to retail stores to malls to hospitals –
>
> Q      Okay.
>
> A      -- businesses.
>
> Q      Okay. The receptionist and info clerk what, what kind -- would that be a -- what kind of work setting would that be?
>
> A      The same thing, a lot of different types.
>
> Q      What I'm wondering is would there be a difference in the work setting between that and what she did in her old work. I mean she had -- her old work –
>
> A      There would be –
>
> Q      I guess it was the one that you're taking these transferable skills is from the Dollar Store?
>
> A      Yes.

8

> Q      Okay. What, what would be the -- could you describe that setting, the Dollar Store kind of setting?
>
> A      No.
>
> Q      Is that kind of like a department, not a department store but a –
>
> A      It's not as big as a Wal Mart, I mean it's a smaller department store. A lot of varies according to individual Dollar Store sizes.
>
> Q      Okay. And it's mostly selling merchandise where people come in an[d] buy knick knacks or they supplies or whatever?
>
> A      Yes, which is not much, I mean it's a smaller version of a Wal Mart, I mean a much smaller version.

*Id.* at 627-29.  Read in context, the court cannot conclude that the VE's statement "[t]here would be" means that plaintiff would necessarily have more than very little vocational adjustment between her old work and the jobs identified by the VE.

Additionally, plaintiff's counsel asked the VE if there would be more than very little vocational adjustment for plaintiff in an order clerk job, and the VE stated that is was "[p]ossible."  Transcript at 629.  However, the court finds that the VE's testimony does not foreclose the possibility that there would not be more than very little vocational adjustment.

Aside from the aforementioned rhetorical arguments, plaintiff provides her own summaries of how the D.O.T. and the U.S. Dept. of Labor – Occupational Outlook Handbook define each job identified by the VE.  *Id*.  Plaintiff does not explain how the summaries support her arguments, but concludes that the "VE's testimony as well as a straight reading of how the DOT and the U.S. Dept. of Labor – Occupational Outlook Handbook describe the jobs outlined

by the VE confirms that . . . they would require more than "very little, if any vocational adjustment."" *Id*. at 8-9.

For his part, defendant compares plaintiff's PRW to the D.O.T. definitions of the jobs identified by the VE. *Id.* at 4-5. Defendant accurately states that the D.O.T. indicates that order clerks perform duties such as processing merchandise orders, communicating information, monitoring inventory, and performing sales duties. *Id*. at 4. These, of course, are duties identified by the VE, which the plaintiff gained in her PRW. Transcript at 621. Defendant also accurately states that the D.O.T. indicates extensive similarities between plaintiff's PRW and the receptionist/information clerk and interviewing clerk positions, such as administrative duties and communicating with others. *Compare* doc. 22, at 4. *with* Transcript at 627-29 (each of these jobs entail similar duties to plaintiff's PRW and can be performed in the retail work setting).

Plaintiff's summaries of the D.O.T. definitions do not persuade the court that there is not substantial evidence to support the ALJ's decision. It is true that the VE did not specifically mention that plaintiff had acquired a skill relating to every single duty listed by the D.O.T. for each job, but this was not required. The question here is whether there is substantial evidence in the record to support the Commissioner's decision. The court must affirm the Commissioner's decision if there is "relevant evidence [which] a reasonable mind might accept as adequate to support a conclusion." *Greenspan*, 38 F.3d at 236.

In summary, first the VE testified that plaintiff had acquired skills from her PRW. Then, the VE testified that plaintiff could perform several jobs using her acquired skills and that the D.O.T. was not in conflict with his testimony. Finally, as indicated by the VE's testimony and the D.O.T., each of the jobs identified by the VE can be performed in the same work setting as

plaintiff's PRW. These are sufficient facts that the ALJ could rely upon in determining that plaintiff would experience very little vocational adjustment in performing the jobs identified by the VE. Plaintiff's arguments that the ALJ relied on non-existent testimony and did not apply proper principles of law are wrong. Substantial evidence supports the Commissioner's decision.

## IV.

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's determination be AFFIRMED and that plaintiff's Complaint be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on this 29th day of December, 2009.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE